IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GORDON S. WALKER, SR.,          )
                                )
            Plaintiff,          )
                                )
      v.                        )      Civil Action No. 11-866-GMS-CJB
                                )
UNITED STATES OF AMERICA,       )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

In this action filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671,

*et seq.*, Plaintiff Gordon S. Walker, Sr. ("Plaintiff" or "Walker") brought a negligence suit

against Defendant United States of America ("Defendant" or the "Government"). Presently

pending before the Court is Defendant's motion to dismiss the Complaint for lack of subject

matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Motion"). (D.I. 43)

For the reasons that follow, the Court recommends that the Motion be GRANTED.

## I.      BACKGROUND

### A.      Factual and Procedural Background

On September 28, 2009, a car driven by Donna Phelps ("Phelps") rear-ended a car driven

by Plaintiff, while Plaintiff's car was stopped at the intersection of South State Street, Roosevelt

Avenue and Wyoming Avenue in Dover, Delaware. (D.I. 1 at ¶¶ 8-9; D.I. 46 at 1)  At the time of

the incident, Phelps was an employee of the United States Postal Service ("USPS"). (D.I. 1 at ¶

9; D.I. 7 at ¶¶ 9-10; D.I. 47 at 3)

On February 3, 2010, Phelps's insurance carrier denied coverage for Plaintiff's claim

against Phelps, noting that "[a]t the time of the loss our insured, Donna Phelps was working for

the United States Post Office"; the carrier's letter directed Plaintiff to contact a particular USPS employee to further pursue his claim. (D.I. 46, ex. 3)

On February 26, 2010, Plaintiff's counsel directed a letter to the USPS, indicating that Plaintiff had obtained representation in the matter. (*Id.*, ex. 4) The February 26, 2010 letter enclosed a copy of a police report regarding the accident and the letter from Phelps's insurance carrier denying coverage, but did not include a demand for money damages. (*Id.*)

A reply letter from the USPS, dated March 5, 2010, advised Plaintiff to present a claim on a Standard Form 95 ("SF95") within two years of the incident. (*Id.*, ex. 5) The USPS letter enclosed a copy of the SF95, as well as instructions that the form "must be filled out completely and submitted with supporting documentation before this paperwork will constitute a valid claim." (*Id.*)

Plaintiff did not next correspond with the USPS until April 6, 2011, over a year later, when his counsel directed a letter to the USPS that: (1) related the alleged facts regarding the incident, (2) provided details regarding Plaintiff's medical condition, and (3) demanded a sum of $125,000 for the injuries that he sustained in the accident. (D.I. 44, ex. 3) The letter was marked as received by the USPS on April 26, 2011. (*Id.*)

Additionally, at some point thereafter, Plaintiff's counsel submitted an SF95 to the USPS on Plaintiff's behalf. (D.I. 46 at 2) The USPS received the form on April 26, 2011. (D.I. 46, ex. 6)[1] However, certain boxes on the form were left blank, and thus the form did not contain certain requested information, such as the date of the claim or the signature of the claimant. (*Id.*; D.I.

---

[1]     The record is not clear as to how and when this first SF95 was sent to the Government. In his answering letter brief, Plaintiff states that it was submitted on April 25, 2011. (D.I. 46 at 2)

2

44, ex. 4) Therefore, on April 26, 2011, the USPS sent Plaintiff a letter indicating that his last correspondence "[could not] be accepted as a valid claim" and advised Plaintiff to "supply all material facts on" an SF95 in order for Plaintiff's "claim to receive proper consideration." (D.I. 44, ex. 4) The letter specified the particular boxes that had been left blank on the prior, incomplete SF95. (*Id.*) It also enclosed a new SF95, along with instructions that the form should be "completed and resubmitted, in its original form, before the [USPS] can take any action to dispose of this claim." (*Id.*)

On May 13, 2011, Plaintiff's counsel sent a letter to the USPS by mail, enclosing, *inter alia*, a now fully completed SF95. (D.I. 44, ex. 5) This form had been signed by Plaintiff, and on it, Plaintiff had listed his "Date of Claim" as April 25, 2011. (*Id.*, ex. 6) The USPS received this letter and the enclosed SF95 on May 16, 2011. (*Id.*, exs. 5 & 6) Despite any language to the contrary in its prior correspondence (and despite Plaintiff's assertion that his "Date of Claim" was April 25, 2011), the USPS thereafter considered the date of receipt of Plaintiff's complete, valid claim to be April 26, 2011.[2] (*Id.*, ex. 7)

On May 19, 2011, the USPS mailed Plaintiff a letter in which it acknowledged April 26, 2011 as the date of claim, stated that the USPS "intend[s] to adjudicate this claim as soon as possible," and informed Plaintiff that "by Statute, the Postal Service has six months from April 26, 2011 in which to adjudicate your claim." (*Id.*)

---

[2]     The Government indicates that it considered April 26, 2011 to be the date of claim because the now fully completed SF95 "relate[d] back to the USPS's April 26, 2011 receipt of [Plaintiff's] counsel's correspondence." (D.I. 44 at ¶ 5) In any event, the difference in the date of claim listed by Plaintiff in his SF95 and that adopted by the USPS (i.e., April 25 or April 26) is not material for purposes of the resolution of this Motion. (*Id.* at ¶ 6)

On September 26, 2011, Plaintiff filed his Complaint in the instant case against both Phelps and the Government. (D.I. 1) Thereafter, on October 20, 2011, the USPS denied Plaintiff's administrative claim, on the ground that it "determined that [] Phelps was not acting within the scope of her employment at the time of the incident." (D.I. 44, ex. 8 at 1) In that letter, the USPS wrote that "any suit filed in regards to this denial must be filed no later than six (6) months from the date of the mailing of this letter, which is the date [October 20, 2011] shown above." (*Id.*)

A few months later, on January 13, 2012, the Government filed an Answer in the instant case, and also prepared a stipulation (later granted) to remove Phelps as a defendant. (D.I. 7, 9, 10) In its Answer, the Government now repeatedly acknowledged and admitted that, contrary to the USPS's prior position, Phelps "was operating a vehicle in the scope and course of her employment with the United States Postal Service at the approximate time and place of the events alleged in the Complaint." (D.I. 7 at ¶¶ 9-10) On the same date, the Government filed a separate certification stating the same. (D.I. 8)[3]

This case was later referred to the Court by Chief Judge Gregory M. Sleet on May 7, 2012, for the Court to conduct all proceedings related to dispositive and nondispositive motions up to the pretrial conference. (D.I. 12) On June 27, 2013, the Government filed the instant Motion. (D.I. 43) The Government's motion was fully briefed as of August 12, 2013. (D.I. 47)

## II.    STANDARD OF REVIEW

---

[3]      The Government has indicated that at the time of the accident, Phelps was returning to work at the USPS from a visit to her doctor's office. (D.I. 47 at 3 n.3 & ex. 1) It states that these "arguably ambiguous facts apparently led to the USPS's initial determination that Ms. Phelps had been outside of her employment at that time." (D.I. 47 at 3 n.3)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction. "Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact)." *Kuhn Constr. Co. v. Diamond State Port Corp.*, Civ. No. 10-637-SLR, 2011 WL 1576691, at *2 (D. Del. Apr. 26, 2011). Normally, once a challenge to subject matter jurisdiction is made, the plaintiff bears the burden of establishing that it exists. *Id.* (citing *Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000)); *Burke v. Gonzales*, Civil Action No. 1:06-CV-0573, 2006 WL 3762061, at *3 (M.D. Pa. Dec. 21, 2006).

"In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *see also Kuhn*, 2011 WL 1576691, at *2. Dismissals on this basis are only proper "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946); *see also Kuhn*, 2011 WL 1576691, at *2.

On the other hand, "[i]n reviewing a factual challenge to the Court's subject matter jurisdiction," a court "is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the [c]omplaint." *Shahin v. Del. Dep't of Fin.*, Civ. No. 10-188-LPS, 2012 WL 1133730, at *3 (D. Del. Mar. 30, 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction." *Id.* at *3 (citing *Gotha v. United States*, 115

5

F.3d 176, 179 (3d Cir. 1997)); *see also Reybold Venture Grp., XI-A LLC v. Del. Dep't of Educ.*,
— F. Supp. 2d —, 2013 WL 2367805, at *2 (D. Del. May 30, 2013). The existence of disputed
material facts will not preclude the court from evaluating for itself the merits of the jurisdictional
claims, and the Court may freely "weigh the evidence and satisfy itself as to the existence of its
power to hear the case." *Mortensen*, 549 F.2d at 891.

A factual attack calls into question the essential facts underlying a jurisdictional claim,
and argues that "while the pleadings themselves facially establish jurisdiction, one or more of the
factual allegations is untrue, thereby causing the matter to fall outside the court's jurisdiction."
*Cool v. United States*, Civil. No. 1:12–CV–00568, 2012 WL 4895180, at *3 (M.D. Pa. Oct. 15,
2012). Here, the motion at hand presents a factual challenge because the Government challenges
not any alleged pleading deficiency, but instead contends that Plaintiff failed to exhaust his
administrative remedies, and thereby failed to comport with the jurisdictional prerequisites of the
FTCA. *See, e.g., Knight v. United States*, Civil Action No. 1:08-CV-1268, 2008 WL 4671788, at
*1 (M.D. Pa. Oct. 20, 2008) (finding a jurisdictional challenge to be factual because the motion
"does not concern a pleading deficiency, but rather the failure of the Plaintiffs' claims to comport
with the jurisdictional prerequisites contained in the FTCA"); *Wright v. United States*, Civil
Action No. 06-5162, 2007 WL 1030574, at *2 (E.D. Pa. Apr. 3, 2007) (same). *See also* (D.I. 1 at
¶ 3).

## III.   DISCUSSION

The FTCA operates as a limited waiver of the United States' sovereign immunity from
suit. *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). Thus, the United
States' consent to be sued, as expressed under the terms of the FTCA, defines the Court's subject

6

matter jurisdiction. *Id.*; *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008). "Because the [FTCA] constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." *White-Squire*, 592 F.3d at 456 (internal quotation marks and citation omitted).

The FTCA provides that a tort claim against the United States is barred if an administrative claim is not presented within two years after the claim accrues. 28 U.S.C. § 2401(b). With regard to when a legal action may be brought regarding a tort claim against the United States, the FTCA provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency *and his claim shall have been finally denied* by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim *within six months after it is filed* shall, at the option of the claimant *any time thereafter*, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a) (emphasis added). Moreover, the FTCA explains that if the federal agency denies an administrative claim, then the claimant must thereafter file suit "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).[4]

Therefore, an individual who has presented an administrative claim pursuant to the FTCA

---

⁴      For ease of reference, the Court will refer to Section 2675(a)'s requirement that a claimant wait to file suit for at least six months after presenting an FTCA claim as the "six month waiting period." It will refer to Section 2401(b)'s requirement that suit must be filed within six months after the mailing of a claim denial as the "six month limitations period." And it will refer to Section 2401(b)'s requirement that an FTCA claim must be presented to a federal agency within two years of accrual of the claim as the "two year limitations period."

to a federal agency has two basic paths toward exhaustion of his administrative remedies: (1) he can wait until the agency has denied his claim, whenever that may occur, and file suit within six months after the date of the mailing of the notice of denial; or (2) if the agency fails to take final action on the claim within six months after the presentment of that claim, then the agency's inaction may be deemed a final denial of the claim and the claimant may thereafter choose to file suit. The requirement of a final denial and exhaustion of administrative remedies is an unambiguous jurisdictional requirement that cannot be waived. *McNeil v. United States*, 508 U.S. 106, 112 (1993) ("Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process."); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). Accordingly, a court does not have jurisdiction over an FTCA claim before administrative remedies have been exhausted, and must dismiss any action initiated prematurely. *See, e.g., Roman ex rel. Roman v. Lancaster Gen. Hosp.*, Civil Action No. 10-1437, 2010 WL 3155322, at \*6 (E.D. Pa. Jul. 29, 2010); *Wilder v. Luzinski*, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000) (citations omitted).

The Government here argues that Plaintiff failed to exhaust his administrative remedies before filing suit, as required by the FTCA's Section 2675(a). (D.I. 44) The Government's argument rests on the presumption that Plaintiff presented a valid claim on April 26, 2011—thereby giving the USPS until October 26, 2011 (or six months from the date of the April 26, 2011 filing) to dispose of the claim before Plaintiff could bring suit. (D.I. 44 at 2; D.I. 47 at 1) Plaintiff, on the other hand, maintains that: (1) he properly exhausted his administrative remedies before filing suit, because his claim was first presented not on April 26, 2011, but instead on February 26, 2010—the date on which his counsel first directed a letter regarding the

8

accident to the USPS, or (2) if the suit was indeed filed prematurely, then the six month waiting

period required by Section 2675(a) was subject to equitable tolling under the particular

circumstances present here. (D.I. 46) The Court will address Plaintiff's arguments in turn.

## A.    Exhaustion of Administrative Remedies

Plaintiff's first argument hinges on what constitutes a valid claim under the FTCA. If

Plaintiff's February 26, 2010 letter was such a claim, then he was entitled to file suit in this Court

on September 26, 2011 (a date well over six months from the presentment of the claim).

However, if the presentment of a valid claim requires something more than what was included in

the contents of the February 26, 2010 letter, then the suit was indeed premature. The Court must

therefore analyze the requirements for presenting a valid claim under the FTCA.

28 C.F.R. § 14.2(a) states that for purposes of Section 2675:

> [A] claim shall be deemed to have been presented when a Federal agency
> receives from a claimant, his duly authorized agent or legal representative,
> an executed Standard Form 95 or *other written notification* of an incident,
> *accompanied by a claim for money damages in a sum certain* for injury to
> or loss of property, personal injury, or death alleged to have occurred by
> reason of the incident; and the title or legal capacity of the person signing,
> and is accompanied by evidence of his authority to present a claim on
> behalf of the claimant as agent, executor, administrator, parent, guardian,
> or other representative.

28 C.F.R. §14.2(a) (emphasis added). Thus, in order to be valid, a claim must include at the

minimum:  (1) an executed SF95 or other written notification of the incident; (2) a claim for a

sum certain of money damages for injury alleged to have resulted from the incident; and (3) if the

claim is filed on behalf of the claimant, evidence of authority to represent a claim on behalf of

the claimant. *See, e.g., Obeng v. Del. State Police*, No. Civ.A.04–1248 (GMS), 2005 WL

1592951, at \*2 (D. Del. Jul. 7, 2005); *Nickle v. U.S. Army Corps of Eng'rs*, No. Civ.A. 03–322

GMS, 2003 WL 21640373, at *2 (D. Del. Jul. 10, 2003). With regard to the second requirement (known as the "sum requirement" or "sum certain requirement"), a plaintiff must state a specific sum or information from which a specific amount could be computed. *Bruno v. U.S. Postal Serv.*, 264 F. App'x 248, 249 (3d Cir. 2008) (internal quotation marks and citations omitted). The purpose of the requirement is to "enable a determination by the head of the federal agency as to whether the claim falls within the jurisdictional limits of his exclusive authority to process, settle or to properly adjudicate the claim . . . [and] to set up uniform procedures in the exercise of settlement authority." *Id*. at 248-49 (internal quotation marks and citation omitted).

The United States Court of Appeals for the Third Circuit has repeatedly emphasized the importance of the sum certain requirement. *White-Squire*, 592 F.3d at 459. For example, in *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453 (3d Cir. 2010), the plaintiff sent a letter to the USPS providing formal notice that she was pursuing a personal injury claim against the agency, but the letter did not include a sum certain claim for damages. *White-Squire*, 592 F.3d at 455. When the plaintiff later filed suit in federal court, the district court found that it was without jurisdiction to decide the case because plaintiff had failed to satisfy the sum certain requirement prior to filing suit. *Id*. at 456. The plaintiff argued that she should not have been required to do so, because her medical treatment was ongoing at the time and her damages could not be liquidated. *Id*. The Third Circuit disagreed and refused to create an exemption to "the jurisdictional obligation to present a claim for a sum certain" set out in Section 2675(a). *Id*. at 458. In doing so, the *White-Squire* Court noted that, *inter alia*, "requiring all claimants to present a sum certain claim for damages advances Congress's purpose in requiring administrative presentment, which is to encourage the settlement of meritorious claims." *Id*. at 459. Ultimately,

10

it held that the claimant's failure to present a sum certain in her notice letter compelled the

conclusion that the district court lacked subject matter jurisdiction over the claim. *Id.* at 457-60;

*see also Bruno*, 264 F. App'x at 249 (same); *Nickle*, 2003 WL 21640373, at *1-2 (same).

In this case, Plaintiff "urges the Court to adopt February 26, 2010 as the operative date of

submission of the claim," noting that if the Court did so, this would "moot Defendant's motion

as Plaintiff would have then been free to file suit pursuant to [Section] 2765(a)" when he brought

the Complaint in this case on September 26, 2011. (D.I. 46 at 5) Yet it is clear that in neither the

body of that February 26, 2010 letter, nor in any of its attachments, did Plaintiff include a claim

for money damages in a sum certain, nor information from which a specific monetary amount

could be computed. (*Id.*, ex. 4) In his answering brief, Plaintiff does not contend otherwise.

(*Id.*) Thus, the February 26, 2010 letter did not meet the requirements of a valid claim under the

FTCA. *See, e.g.*, *White-Squire*, 592 F.3d at 457-60; *Bruno*, 264 F. App'x at 249.

Plaintiff also asks the Court to consider his "collective submissions" in light of the

purpose of Section 2675(a). (D.I. 46 at 5) In support, he cites to *Tucker v. U.S. Postal Serv.*, 676

F.2d 954, 958 (3d Cir. 1982), for the proposition that Section 2675(a) necessitates only that

"minimal notice" be provided to the government, and he implicitly suggests that the February 26,

2010 letter met that standard. (*Id.* at 4-5) However, even in *Tucker*, when the Third Circuit

referred to the content of the "minimal notice" required by Section 2675, it emphasized that such

notice must include "a statement of damages." *Tucker*, 676 F.2d at 958-59. Plaintiff's February

26, 2010 letter thus did not meet even the minimum threshold referred to in *Tucker* (and in

11

Section 2675(a) itself).[5]

Furthermore, no aspect of Plaintiff's "collective submissions" in the record prior to April 2011 contains a claim for a sum certain. The first communication that references a claim for damages is Plaintiff's April 6, 2011 letter to the USPS, which demanded a sum of $125,000 for the injuries Plaintiff sustained. (D.I. 44, ex. 3)[6] There appears little dispute that this letter was not received by the USPS until April 26, 2011. Thus, April 26, 2011 is the earliest date that Plaintiff's claim could have been deemed to be "presented." (*Id.*); *see also Lightfoot*, 564 F.3d at 627-28 (finding that a claim is not "presented" for purposes of the FTCA until the federal agency is in actual receipt of the claim); *Arias v. United States*, Civil Action No. 05-4275 (JLL), 2007 WL 608375, at *4 (D.N.J. Feb. 23, 2007) ("to satisfy their presentment obligation, a plaintiff must demonstrate that the appropriate federal agency actually *received* the claim") (emphasis in original).

---

[5]      In this section of his answering letter brief, Plaintiff also: (1) speculates that the USPS may have been on earlier notice of his claim prior to the February 26, 2010 letter and "wonder[s]" about what the content of such communications might have been; and (2) faults the USPS for not earlier requesting additional information regarding his claim. (D.I. 46 at 5-6) As to the first point, it is Plaintiff's burden to establish that subject matter jurisdiction exists, and he cannot do so by speculating about the content of communications not of record that may or may not have occurred. With regard to the second point, it is worth noting that approximately two weeks after receiving Plaintiff's February 26, 2010 letter, the USPS provided Plaintiff with an SF95, and noted that it should be "filled out completely" before Plaintiff's paperwork would be considered a "valid claim." (D.I. 44, ex. 2) That form includes a section for "Amount of Claim[.]" (*Id.*, ex. 6) Nevertheless, Plaintiff did not next respond to the USPS until April 2011. Thus, if anything, the record indicates that Plaintiff failure to include a sum certain to the USPS on February 26, 2010 or soon thereafter was due to Plaintiff's inaction, not any inaction on the part of the USPS.

[6]      The letter also meets Section 2675(a)'s other notice requirements, as it provides written notification of the incident and makes clear that its author, Plaintiff's counsel, has authority to represent a claim on behalf of Plaintiff. (D.I. 44, ex. 3)

For these reasons, Plaintiff's September 26, 2011 suit was filed prematurely, because in filing that suit, he failed to give the USPS six months to consider his claim as required by the FTCA. Absent further sufficient argument, Plaintiff's failure to exhaust administrative remedies in this regard would deprive this Court of jurisdiction over the case.

## B.    Equitable Tolling

Plaintiff nevertheless suggests that even if his claim was deemed presented as of April 26, 2011, Section 2675(a)'s six month waiting period should be subject to equitable tolling, rendering the filing of his claim permissible. (D.I. 46 at 6-8)

The Third Circuit has held that equitable tolling may apply in an FTCA case in three circumstances: (1) if the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum. *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009); *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005).[7]  If applicable, equitable tolling can rescue an FTCA claim otherwise barred as untimely by the statute of limitations when a plaintiff has "been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Santos ex rel. Beato*, 559 F.3d at 197 (internal quotation marks and citation omitted).  In order to receive the

---

[7]     In assessing FTCA cases, some courts have specifically articulated the difference between the related doctrines of equitable tolling and equitable estoppel, and have distinguished the circumstances where one doctrine or the other might apply to a given case. *See, e.g.*, *Waltz v. United States*, No. 1:06-cv-1831-SMS, 2008 WL 152138, at *5-6 (E.D. Cal. Jan. 16, 2008); *Miller v. United States*, 803 F. Supp. 1120, 1127 (E.D. Va. 1992).  The Third Circuit has tended not to do so, however, referring solely to the availability of "equitable tolling" in such cases. *See, e.g.*, *Jones v. United States*, 366 F. App'x 436, 439-40 (3d. Cir. 2010); *Santos ex rel. Beato*, 559 F.3d at 197.

benefit of the "extraordinary" remedy of equitable tolling, which is extended "only sparingly[,]" a

plaintiff must have exercised due diligence in pursuing and preserving the claim. *Id.* (internal

quotation marks and citations omitted).  Moreover, the principles of equitable tolling do not

extend to "garden-variety claims of excusable neglect." *Id.* (internal quotation marks and citations

omitted); *see also Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) ("In non-capital cases, attorney

error, miscalculation, inadequate research, or other mistakes have not been found to rise to the

'extraordinary' circumstances required for equitable tolling.").

　　　　Plaintiff asserts that this is a case where equitable tolling is appropriate, on the ground that

the Government has actively misled him regarding his cause of action. (D.I. 46 at 7 ("[I]t was the

actions of the USPS that induced and/or tricked Plaintiff into filing his complaint early."); *id.* at 8

("[T]here can be no doubt that Plaintiff was actively misled by Defendant respecting the cause of

action and thereby prevented from asserting his rights . . . .")) However, for the reasons set forth

below, the Court finds that there is no basis in the record to support the invocation of that

extraordinary remedy on the cited ground.[8]

---

　　　　　　[8]　　　As an initial matter, the Government contends that equitable tolling could not be
applicable under these facts because the doctrine is intended to provide relief to plaintiffs who
file their claim too late, after a limitations period has run—and that it does not extend to
plaintiffs like Walker, who file suit too early, in violation of the FTCA's six month waiting
period. (D.I. 47 at 4 (arguing that an equitable tolling analysis "simply has no applicability to the
instant case, where Plaintiff filed his complaint before exhausting his administrative remedies"))
In other FTCA cases, plaintiffs have articulated their argument regarding the applicability of
equitable tolling in the same way that Plaintiff does here—in circumstances where the plaintiff
filed an FTCA action prior to the expiration of the six month waiting period—and courts have
considered those arguments. *See, e.g., Estate of George v. Veteran's Admin. Med. Ctr.*, 821 F.
Supp. 2d 573, 580-81 (W.D.N.Y. 2011); *Mar v. United States*, No. CIV S-08-0644 EFB, 2009
WL 737040, at *1-4 (E.D. Cal. Mar. 19, 2009). These cases suggest that the more appropriate
way to refer to this type of request is as one seeking the equitable tolling not of Section 2675(a)'s
six month waiting period, but instead of the deadline for the expiration of Section 2401(b)'s six
month limitations period (which here, as is discussed below, expired six months after the mailing

The thrust of Plaintiff's argument is that up through the filing of the instant action, the

USPS "never acknowledged that Phelps was in the course of her employment at the time of the

accident." (D.I. 46 at 7) Thus, Plaintiff asserts that because the Government concealed material

facts regarding whether he had a federal cause of action, this caused Plaintiff's counsel to

"speculate whether or not [his] claim was even proper under the FTCA" and left counsel "in

limbo and very suspicious regarding the proper defendant [i.e., either the USPS or Phelps,

depending on whether Phelps was acting within the scope of her employment at the time of the

accident] to pursue." (*Id.*) Plaintiff states that the statute of limitations for filing any potentially

applicable state law claim (if it turned out that an FTCA claim was not viable) was September 28,

2011. (*Id.*) He then explains that given the lack of clarity as of that date regarding whether

Phelps was acting within the scope her employment at the time of the accident, his counsel "had

no choice but to file his complaint [in this Court] prior to the September 28, 2011 Delaware

statute of limitations running[.]" (*Id.*) It is that premature filing on September 26, 2011 and its

aftermath that precipitated the instant Motion.

In order to support a finding that a defendant "actively misled" a plaintiff respecting the

plaintiff's cause of action, unsurprisingly, courts in this Circuit have required evidence of some

type of active, deliberate misconduct or misrepresentation on the part of the defendant.[9] The

___

of notice of the Government's denial of Plaintiff's claim on October 20, 2011). *See, e.g., Mar*,
2009 WL 737040, at *5; *Waltz*, 2008 WL 152138, at *5. As a result, the Court will analyze the
request here as one seeking to toll the expiration of the deadline regarding the six month
limitations period.

[9]     *See, e.g., McLaughlin v. United States*, Civil Action No. 11-7325 (SRC), 2012
WL 1389642, at *4 (D.N.J. Apr. 20, 2012) (finding that plaintiff had not demonstrated that
defendant had actively misled him for purposes of equitable tolling analysis, where there was no
allegation of "some scheme by the Government to mislead Plaintiff and dodge the threatened

Third Circuit's decision in *Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005), is representative. In *Hedges*, the *pro se* plaintiff was involved in a boat accident in Virgin Islands National Park. *Hedges*, 404 F.3d at 745. Thereafter, the plaintiff sought advice from several federal officials regarding the proper legal avenues in which to pursue a claim. *Id.* A number of federal representatives, including an attorney with the Department of Interior ("DOI"), sent correspondence to the plaintiff advising him to file an administrative claim under the FTCA and enclosing an SF95. *Id.* at 745-46, 751. The plaintiff did file an FTCA claim, but the claim was later denied by the DOI. *Id.* at 746. In denying the claim, the DOI found that the claim was for a maritime tort, a cause of action cognizable not under the FTCA, but instead under the Suits in Admiralty Act ("SAA"); the claim denial also explained that the plaintiff did not have a meritorious claim under the SAA either. *Id.* By the time this claim was denied, the two year statute of limitations for filing suit pursuant to the SAA had lapsed. *Id.* at 746, 751.

The plaintiff eventually filed a civil case in federal court, asserting a cause of action pursuant to the FTCA. *Id.* at 746. After the government moved to dismiss, on the ground that the SAA provided exclusive jurisdiction for maritime claims like this one, the plaintiff sought to amend his complaint. *Id.* In doing so, the plaintiff argued that the SAA's statute of limitations should be equitably tolled because he had been "'induced'" by federal officials to "'abstain from filing [an SAA claim] in [District] Court until after pursuing [an] administrative claim with the

lawsuit"); *Albright v. Keystone Rural Health Ctr.*, 320 F. Supp. 2d 286, 290 (M.D. Pa. 2004) (finding that defendant had not satisfied this requirement where there was no showing that defendants "deliberately misled" plaintiffs); *Forman v. United States*, No. CIV. A. 98–6784, 1999 WL 793429, at *11 (E.D. Pa. Oct. 6, 1999) (finding this requirement not met, as defendant agency's conduct did not "rise to the level of active misrepresentation[,]" since allegedly misleading letter sent by agency to plaintiff was "a proper statement of the law and no more").

Federal Tort Claims Act." *Id.* (citation omitted). The district court ultimately granted the motion to dismiss, finding that equitable tolling was not warranted under the circumstances. *Id.* at 747.

On appeal, the Third Circuit upheld the district court's decision. *Id.* at 754. In doing so, the *Hedges* Court noted that "[w]hile the Government did inform [plaintiff] that he should pursue an administrative claim under the FTCA, we do not find that this advice was "'actively misleading.'" *Id.* at 752. The Court noted that the most important factor in its analysis was that "there is no record evidence, nor does [plaintiff] contend, that Government officials advised [him] that he did not have a judicial remedy, or should not pursue one in addition to his [FTCA] administrative claim." *Id.* It emphasized that plaintiff "cites no cases for the proposition that the Government has an affirmative duty to inform litigants . . . that they have viable judicial, as well as administrative remedies" and that the case law suggested the opposite conclusion. *Id.* Ultimately, the *Hedges* Court concluded that "[s]imply stated, the Government did not induce or trick [plaintiff] into foregoing his judicial remedies by making any affirmative misrepresentations regarding the proper avenues to pursue his claim." *Id.*

In this case, the evidence of record similarly does not indicate that the Government, as Plaintiff alleges, made affirmative misrepresentations with the deliberate intent to induce or trick Plaintiff into failing to protect his federal rights. In fact, Plaintiff fails to point to any affirmative, intentional conduct on the part of the USPS, occurring prior to his filing of the instant action on September 26, 2011, that could be said to have actively misled him. Instead, Plaintiff cites simply to the fact that prior to that point, the Government "never acknowledged" one way or the other, whether in its view Phelps had been acting in the scope of her employment with the USPS at the time of the accident. (D.I. 46 at 7) Plaintiff does not explain how this silence equates to the kind

17

of active, intentional misrepresentation required to trigger equitable tolling.[10]

Plaintiff also refers to the content of the USPS's May 19, 2011 letter as one that "cemented Counsel's concerns that the USPS was going to deny that Phelps was even an employee." (*Id.*) But that letter did little more than note that the USPS was "currently in the process of reviewing th[e] claim in order to make the determination as to any legal liability on the part of the [USPS,]" stated that it would do so as soon as possible, and provided contact information to Plaintiff. (*Id.*, ex. 9) That type of benign procedural summary does not contain any type of misrepresentation. *See Jones v. United States*, 366 F. App'x 436, 439-40 (3d Cir. 2010) (rejecting plaintiff's argument that the FTCA statute of limitations should be equitably tolled because certain paperwork sent by the federal agency while investigating plaintiff's disability claim "'would lull any claimant into believing that his claim was adequately and appropriately being addressed[,]'" as the paperwork at issue indicated "only that the [agency] sought to process [plaintiff's] disability claim[,]" and the agency "was not required to advise [the plaintiff] with respect to other legal remedies that might be available") (internal citation omitted). In fact, the only other statement in the USPS's May 19, 2011 letter was that "by Statute, the Postal Service has six months from April 26, 2011 in which to adjudicate your claim." (D.I. 46, ex. 9) There could be no clearer, accurate warning to Plaintiff that if he filed a federal civil suit prior to the expiration of this six month waiting period, the suit would be untimely.

Otherwise, in explaining why he filed the instant suit prematurely in late September 2011,

---

[10]     Indeed, Plaintiff's counsel does not specifically aver that he affirmatively asked the Government to take a position on this issue prior to September 26, 2011. (D.I. 46-1 ("Jachetti Affidavit") at ¶¶ 7-15)

Plaintiff's submission largely focuses on the mental processes of his counsel. This portion of Plaintiff's argument relates not to misleading actions on the part of the Government, but instead to his counsel's own "speculat[ion]" and "suspici[ons]" as to what type of claim was most appropriate for Plaintiff to file. (D.I. 46 at 7; *see also* D.I. 46-1 ("Jachetti Affidavit") at ¶ 15) In essence, Plaintiff states that his counsel was concerned that the relevant *state* statute of limitations was soon to expire, and felt compelled to file suit in *federal* court before the expiration of the *state* limitations period. (D.I. 46 at 7) Yet even if Plaintiff's counsel was uncertain in late September 2011 as to whether this claim would ultimately be most appropriately pursued in state or federal court, this did not mean that Plaintiff had "no choice" but to file an *FTCA claim* in *federal court* on September 26, 2011. (*Id.*) Indeed, as the Government notes, it is not clear why Plaintiff simply could not instead have "filed against the individual driver in state court [before the expiration of the state statute of limitations] to protect [Plaintiff's] right to file against [Phelps] individually, under state law." (D.I. 47 at 2)[11] And in any event, regardless of what Plaintiff did

---

[11]     Had Plaintiff filed a claim in state court, and had the Government later certified that Phelps was acting within the scope of her federal employment at the time of the accident, the FTCA sets out a procedure by which the case could ultimately have been removed to federal court. Pursuant to the 1988 Westfall Act that amended the FTCA, if a plaintiff files a claim in state court against a federal employee, and then the government later certifies that the employee was acting within the scope of his employment at the time of the accident, the civil action will be removed to the federal district court for the district in which the state claim was pending, with the United States to be substituted for the alleged tortfeasor as the party defendant. 28 U.S.C. §§ 2679(d)(1)&(2); *Santos ex rel. Beato*, 559 F.3d at 193-94. In such a case, even if the plaintiff has never filed an FTCA administrative claim, Section 2679(d)(5) of the FTCA explains that the plaintiff is nevertheless deemed to have done so timely, so long as the claim would have been timely filed if it had been filed on the date that the underlying civil action was commenced, and the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action. 28 U.S.C. § 2679(d)(5); *Santos ex rel. Beato*, 559 F.3d at 193-94.

One of the cases cited by Plaintiff that is distinguishable from the facts here, *Streeper v. United States*, Civ. A. No. 87-2675, 1988 WL 71316 (E.D. Pa. July 1, 1988), is the kind of case

or did not do, or what Plaintiff's counsel was or was not thinking at this time, there is nothing in the record prior to the filing of the instant case suggesting that *the USPS* affirmatively misled Plaintiff in any way.

Next, Plaintiff points to the USPS's October 20, 2011 letter denying his administrative claim, sent "less than a week before" the end of the six month waiting period. (D.I. 46 at 7-8) This letter took the position that Phelps was not acting within the scope of her employment at the time of the incident. (*Id.*) Plaintiff links the letter to a claim for equitable tolling by arguing that it was part of USPS's efforts to "actively mislead" him into believing that Phelps was not acting in the scope of her employment at the time of the accident. He argues that: (1) had he earlier known that the Government would later not contest the scope of employment issue, he would not

---

that the Westfall Act was later passed to address. In *Streeper*, a plaintiff was involved in a car accident with an employee of the United States Navy, but because the Naval employee failed to advise the police, his insurer or the Navy of the accident, the plaintiff did not become aware of the Naval employee's federal employment until over three years from the date of the accident. *Streeper*, 1988 WL 71316, at *1. The plaintiff had filed suit in state court less than two years after the accident occurred, but had understandably not presented an FTCA claim to a federal agency within the FTCA's two year limitations period, since the plaintiff had no reason to know of the Naval employee's federal employment. *Id.* at *1. The *Streeper* Court held (without specifying whether its decision was premised on equitable tolling principles or on a different legal basis) that "where a plaintiff files an action in state court not knowing nor having reason to know that the defendant was a federal employee acting within the scope of his employment at the time of the accident, and the United States removes the case to federal court after the two year limitations period expires, the failure to file an administrative claim will not be fatal to the plaintiff's claim." *Id.* at *3. It is thus in that context that the *Streeper* Court reasoned that "[o]therwise . . . a defendant, and in some instances, the government, could mislead a plaintiff until the time for filing an administrative claim has passed, leaving the plaintiff without any remedy." *Id.* The instant case is different from *Streeper* in many respects, among them that (1) here Plaintiff knew of Phelps' federal employment within months of the accident; and (2) this knowledge led Plaintiff to file an administrative claim within the FTCA's two year limitations period. And, as noted above, the Westfall Act now provides recourse that was unavailable for the plaintiff in *Streeper*, whose federal FTCA case would have been cognizable after the Act's passage.

have been concerned with the state statute of limitations, and would never have filed the instant

case in September 2011; and (2) instead, he would have filed suit no later than six months after

the USPS' later October 20, 2011 denial of his claim.  (*Id.* at 7-8)[12]

There are many reasons why this October 20, 2011 letter cannot be easily framed as an

affirmatively misleading act intended to prejudice Plaintiff's assertion of civil remedies. First,

Plaintiff's receipt of the letter obviously could not have led him to prematurely file the instant suit

weeks earlier on September 26, 2011. Second, unlike even the correspondence at issue in *Hedges*,

the content of this letter cannot be easily described as an affirmative misstatement intended to

suggest that Plaintiff do (or not do) something that would prejudice him. Third, Plaintiff puts

forward no facts suggesting that the timing and content of this claim denial relates to anything

other than a good faith legal position taken by the Government (one that the Government later

---

[12]      At one point in his answering letter brief, Plaintiff contends that the USPS's
October 20, 2011 letter may not be a valid claim denial under the meaning of Section 2401(b),
because, *inter alia*: (1) the Government "has not shown that the letter was sent by certified or
registered mail as required by [Section] 2401(b)"; and (2) the "letter was not a denial of
Plaintiff's claim on the merits, [but] was simply an affirmative statement that Phelps was not an
employee, thus amounting to nothing more than 'you have the wrong party.'" (D.I. 46 at 8) He
thus suggests that "the six month window to file suit pursuant to [Section] 2401(b) has not even
begun." (*Id.*) The Court finds these arguments to be without merit. As to the first point, the
letter, which is an exhibit of record, on its face states that it was sent by "Certified" mail, "Return
Receipt Requested[,]" and contains the tracking number for such mail pieces used by the USPS.
(D.I. 44, ex. 8) Plaintiff points to no evidence suggesting a contrary conclusion. With regard to
the second point, the letter on its face repeatedly states that it is denying Plaintiff's FTCA claim
and sets out the steps that Plaintiff could take regarding that denial. (*Id.*) Plaintiff cites no
authority for the proposition that an FTCA claim cannot be "denied" by the Government on the
ground that its employee was not acting within the scope of her employment at the time of the
accident or that this was not otherwise a valid notice of claim denial. Indeed, to the contrary,
FTCA claims are regularly denied on that very ground. *See, e.g., Gray v. United States*, 69 Fed.
Cl. 95, 97 (Fed. Cl. 2005); *Machart v. Arvin Cmty. Health Ctr.*, No. 1:11-cv-00341-AWI-MJS,
2013 WL 57702, at *1 (E.D. Cal. Jan. 4, 2013); *Gomez v. United States*, Civil No. 11-1770
(CVR), 2012 WL 3777439, at *3 (D.P.R. Aug. 30, 2012).

altered).[13]

Lastly, Plaintiff faults the Government for not raising the issue of subject matter jurisdiction until soon before the filing of the instant Motion. He argues that had the Government instead raised the issue prior to April 20, 2012—i.e., before the expiration of the six month limitations period—he could simply have re-filed his Complaint within that period. (D.I. 46 at 7-8)

The Court cannot conclude that the Government's failure to raise this issue earlier amounts to actively misleading the plaintiff respecting the plaintiff's cause of action. The Government has asserted that the Court's lack of subject matter jurisdiction only recently came to its attention. (D.I. 42) There is no evidence in the record to suggest otherwise, or that Government intentionally delayed in raising the issue in order to prejudice Defendant.[14]

## IV.   CONCLUSION

In the end, this is a case where the Plaintiff filed suit a few weeks prematurely, depriving the Court of subject matter jurisdiction over the claim. It is true that, had Plaintiff waited just a

---

[13]     To the extent Plaintiff's assertion is that the October 20, 2011 letter amounted to a Government attempt to dissuade him from re-filing his federal complaint prior to the expiration of the six month limitations period—the evidence simply does not bear this out. In that letter, the USPS wrote that "any suit filed in regards to this denial must be filed no later than six (6) months from the date of the mailing of this letter, which is the date [October 20, 2011] shown above." (D.I. 44, ex. 8)

[14]     Plaintiff also suggests that Section 2679(d)(5), which, as noted earlier, applies to actions where the United States is substituted as the party defendant in a case, has some applicability to this matter. (D.I. 46 at 9)  But as the Government notes, (D.I. 47 at 3 n.4), the United States was not substituted as a party here; it was an original defendant in the case and remains a defendant. (D.I. 1) (Phelps was also an original defendant, but she was later dismissed from the case). (*Id.*; D.I. 9) Therefore, Section 2679(d)(5) has no relevance to this case. *See Martin v. United States*, 439 F. App'x 842, 845 (11th Cir. 2011).

short period more, and then filed suit (or later timely re-filed suit), a different result may have come about. But nothing in the record suggests that this failure to exhaust administrative remedies came, as Plaintiff alleges, in response to active, deliberate misconduct by the Government. As in *Hedges*, here there is no evidence that the Government "induce[d] or trick[ed] [plaintiff] into foregoing his judicial remedies by making any affirmative misrepresentations regarding the proper avenues to pursue his claim." 404 F.3d at 752. Under these circumstances, the burden of the failure to follow the FTCA's administrative procedures must fall on Plaintiff.

While dismissal may appear to be a harsh result, the Third Circuit has made it clear that procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of sympathy for particular litigants. *Id.* at 753; *see also Mitchell v. United States*, Civil No. 09–680 (RBK/KMW), 2013 WL 1137043, at *3 (D.N.J. Mar. 18, 2013). To that end, the Supreme Court has explained that "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *McNeil*, 508 U.S. at 113 (internal quotation marks and citation omitted).

For the foregoing reasons, the Court recommends that the Motion to Dismiss be GRANTED with prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874,

878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: October 31, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

24